In the matter of the appeal from a decree of the Union county orphans court allowing the account of the WESTFIELD TRUST COMPANY and EDWIN S. CROSS, as executors of the estate of William M. Cross, deceased. .

[Argued October 18th, 1934.   Decided January 10th, 1935.]

*Mr. Henry T. Stetson,* for the respondents.

*Mr. Paul Q. Oliver* and *Mr. Merritt Lane,* for the appellants.

The opinion of the court was delivered by

CASE, J.

The executors of the last will and testament of William M. Cross, deceased, come before us with appeals from two decrees of the court of chancery, one surcharging the execu-

tors for potential losses and the other refusing to grant a rehearing.

William M. Cross died January 10th, 1929, leaving a last will and testament in which he made provision for his wife, Mary V. Cross, and for his children. He named his brother, Edwin S. Cross, and Westfield Trust Company as executors and trustees. In the will he said, in part:

"I direct my said trustees to sell whatever securities may be necessary to pay any necessary expenses, but only such securities shall be sold as my said brother, Edwin S. Cross, if he then be alive, shall designate.

"I do give my said trustees power of borrowing a sum not exceeding Twenty Five Hundred Dollars, if necessary, in order that my securities be not sold at unfavorable times or on unfavorable terms."

The will was duly probated, and both executors qualified. On September 26th, 1932, the executors filed their petition on final accounting in the Union county orphans court and with it their first and final account as executors. The account was allowed notwithstanding exceptions thereto filed by the widow. Appeal from the decree was taken to the prerogative court by the guardian of the testator's infant children. The proof is meager except for the statistical showing of the stockholdings disclosed by the inventory, the monthly market values from the time of death forward and the evidence of retention—still—of the stockholdings by the executors. An officer of the Westfield Trust Company testified that although that company did not consider the stockholdings hazardous it had counseled the sale of them upon the ground that they did not constitute the kind of investments legal for trust funds, but that Mr. Cross considered that the determination to sell lay with him under the will and that because of the knowledge had by him he was confident that the values would increase to the enrichment of the estate and that therefore he would not consent to sell except when necessary to raise funds for estate needs. The approximate values of the shares at varying periods were as follows: At the appraisal of the estate, $39,000; at the peak preceding the 1929 crash, $71,000; in the succeeding slump, $33,000; in April, 1930,

$62,000; in June, 1932, $3,000; at the filing of the accounting, $9,000. The vice-ordinary was of the opinion that this record threw liability upon the executors, and a decree of surcharge was signed accordingly.

At or about the time of the making of the decree the executors applied for a rehearing, which was denied. We are of the opinion that the vice-ordinary was, under the circumstances of the case, quite within his field of discretion in refusing the rehearing. We pass to the major appeal.

The underlying rule is familiar and simple. The law holds an executor to, and only to, the exercise of reasonable diligence and ordinary prudence and caution. *People's National Bank, &c.*, v. *Bichler, 115 N. J. Eq. 617* (at *p. 620*). The statute has specifically brought the retention by an executor of investments made by the testator within the same field of responsibility in providing (*Comp. Stat. p. 2271 pl. 34; P. L. 1899 p. 236; P. L. 1881 p. 130*) that "whenever * * * such executor * * * may, in the exercise of good faith and reasonable discretion, have continued such investment, or may hereafter continue the same, he shall not be accountable for any loss by reason of such continuance." The principle was stated by Vice-Ordinary Van Fleet in *Heisler* v. *Sharp's Ex'rs, 44 N. J. Eq. 167*, in the following language approved by this court in *In re Corn Exchange National Bank, &c., 109 N. J. Eq. 169*:

"All that the respondents [the executors] were required to do was simply to do what any man of ordinary prudence and caution would, under like circumstances, have done. So long as the executor acts in good faith, and with ordinary discretion, and within the scope of his powers, his acts cannot be successfully assailed. No man is infallible; the wisest make mistakes; but the law holds no man responsible for the consequences of his mistakes which are the result of the imperfection of human judgment, and do not proceed from fraud, gross carelessness or indifference to duty."

Here, as often, it is in the concrete application of the appropriate rule that the difficulty lies.

The vice-ordinary considered that the inaction of the

executors had amounted to gambling and speculating with the trust funds. This conclusion appears to have been based upon the reasoning that, inasmuch as the stocks, having reached a peak, had slumped with the crash and had again risen in the spring and summer of 1930 to a price at which they could have been sold without loss and even at a profit, the executors should then have sold instead of retaining the holdings on a falling market in the mistaken belief that better prices would return. The initial break was thought to have been such notice of instability as to put the executors to the obligation of selling on the rebound. However sound that reasoning would be if applied to the gyration of a single group of stocks in normal times, we think that it loses force in the face of the rule stated above and of the financial cataclysm through which the entire country, to say nothing of the outside world, has been passing. Fortunate and unusual the man, who, in each or any of the succeeding stages of this general distress, has known what, with safety, to do in the effort to preserve the *corpus* of his own estate or of the estate of others.

It must be taken that the testamentary directions regarding securities had reference to the shares of corporate stock. It has been said that stockholdings are not securities (*Graydon's Executors* v. *Graydon, 23 N. J. Eq. 229; 25 N. J. Eq. 561*), but terminology changes and that statement is not now baldly correct. *Blanchard* v. *Blanchard, 116 N. J. Eq. 435.* Corporate shares were the only assets in the testator's estate that could come within the classification of securities.

We construe the will as indicating a desire on the part of the decedent to have his executors retain the stock securities of which he died possessed, selling only such as his brother, Edwin, whether or not the brother qualified as an executor, should designate. The further expressed wish was that the securities should be sold only when the times and the terms were favorable; and as "favorable" is in this connection a relative expression, we are led by the intrinsic force of the situation to believe that Edwin's opinion was, in the mind of the decedent, an essential factor in the determination.

When Edwin qualified, he became, of course, an executor, but in addition to the ordinary functions of that office, he occupied the rather unusual fiduciary position conferred by the testator wherein his judgment on the sale of the securities had a superior place. The dead brother clearly had intended the sale of the securities to rest heavily upon Edwin's judgment. Consequently Edwin was given the power which, when accepted, became a duty. There is no proof that he did not give diligent and honest study to the trust. There is no suggestion that the retention of the securities was not the result of his unselfish and disinterested conviction that that was the wisest course to pursue. He had nothing personal at stake. He was holding, in behalf of the estate, for the better prices that he was sure the stocks would reach. He seems to have been doing that which he was appointed to do, using his best judgment with respect to the sale or retention of securities that had been purchased by the testator. His judgment erred. So did many another's without any taint of gambling or speculation. There was no proof that the stocks were trash, or that the prospect for their recovery was not on a par with the expectations for the general securities market, or that there was any popular belief that security prices in 1931 would continue their recession.

The treacherous path that lay before the investor, whether trustee or otherwise, in the spring and summer of 1931 (when it is suggested that the executors should have sold and reinvested) is apparent when, with the advantage of retrospection, we look upon the debacle that ensued. Favored forms of trust investment were sucked into the maelstrom—mortgage investments, corporate bonds, and even cash in bank. Following came the widespread apprehension of money inflation, in company with which was the doctrine, well received even in conservative circles, that participation in ownership equities was extremely desirable because of its proportionate share in the potential inflation of capital and earnings. However loudly it may now be said that people should have foreseen, most men of that degree of prudence and caution that we call ordinary did not foresee. Wisdom after the event is not the

test of responsibility. *People's National Bank, &c.,* v. *Bichler, supra.* It is said that the trust company could, if it thought that the shares should be sold, have sought court compulsion against its co-executor; and it could, of course, have pursued that course. It is also suggested that both executors could have petitioned the court under chapter 117, *P. L. 1889; 2 Comp. Stat. p. 2267 pl. 28,* for direction as to the continuance of the investment and thus have avoided present personal liability; and so they could have. But neither the last mentioned statute (*Beam* v. *Paterson Safe Deposit and Trust Company, 83 N. J. Eq. 628*) nor the procedure for injunctive relief transcends the 1899 statute, *supra;* further, neither changes the rule of liability enunciated above; and, yet again, Edwin Cross was under a testamentary mandate that in fairness to him and his co-executor must not be forgotten.

We find nothing in the proofs to challenge the good faith of the executors; and we do not find enough in derogation of their diligence and discretion to warrant, in our opinion, the surcharging of them for the potential losses suffered by the estate in the trying period from which we have not yet emerged.

The decree surcharging the executors will be reversed, and the record remitted to the prerogative court for such dispoition as is not inconsistent with this opinion.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, LLOYD, CASE, BODINE, DONGES, HEHER, PERSKIE, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, JJ. 12.